Gerry Dawkins was indicted for the unlawful sale to one C.L. Jordan of more than 28 grams, but less than 200 grams, of cocaine, a controlled substance, to-wit, 39.57 grams of cocaine on or about April 25, 1984 while at or near 1328 McMillan Avenue Southwest, Birmingham, Jefferson County, Alabama, contrary to the provisions of § 20-2-80, Code of Alabama 1975 as amended.
At trial the jury found the appellant "guilty of trafficking in cocaine as charged in the indictment" and, following a sentencing hearing, Dawkins was sentenced to imprisonment in the penitentiary for a period of five years as punishment in this cause. *Page 941 
In addition, the appellant was ordered to pay a fine of $50,000. The sentence in this cause was to run concurrently with four other cases in Jefferson County.
At trial the State presented the testimony of two of the investigating officers who handled the purchase in question, together with a tape showing the actual sale itself. Also, the appellant's co-defendant one Kenneth Ray Arrington, testified as witness for the prosecution.
Birmingham Police Officer Charles L. Jordan had been equipped with a body mike and went to the residence of Arrington at 1328 McMillan Avenue, Birmingham, Alabama, about 2:37 p.m. on April 25, 1984. Gerry Dawkins was not present at the residence of Arrington at this time. Officer Jordan, using the name of Steve Holland, then engaged in a discussion with Arrington. Several discussions ensued and some two or three breaks took place before the actual sale was made to Officer Jordan of the cocaine in question for some $1,950.00.
Because reversible error occurred during the cross-examination of the co-defendant, Kenneth Ray Arrington, a succinct statement of the facts is herein set forth. This court expresses no opinion on the weight and sufficiency of the State's case because of the error hereinafter set forth.
 I
During the cross examination of Kenneth Ray Arrington by defense counsel, the following transpired at trial: (R. 366-369).
 "Q. When did you enter into a plea bargain that you have talked about?
 "A. Well, my attorney brought it to my attention on somewhere around Friday week.
 "Q. Friday a week ago. And you have agreed that if you testify against Gerry Dawkins that the trafficking charge against you will be reduced to a possession charge; is that right?
 "A. Well, I agreed to testify to what happened in this particular case period and that the trafficking would be reduced to possession.
 "Q. You know what the punishment for trafficking is, do you not?
"A. Yes, sir. I understand it's —
"THE COURT: Wait a minute.
 "MR. NAIL: May it please the Court, now I'm going to object to going into punishment.
 "THE COURT: I sustain the objection. Ladies and gentlemen, the function of the jury is to decide between guilt and innocence. Any punishment is up to the Court. You decide either guilt or innocence, and if it's guilty the Court decides the punishment.
 "MR. CLARK. May it please the Court, I'm not offering this as far as guilt or innocence of this defendant. I'm offering to show what this witness is receiving in exchange for his testimony.
 "THE COURT: I understand that, but I still stick to what I have ruled.
"MR. CLARK: I can't go into the plea agreement?
 "THE COURT: Yes. You can go into the plea agreement, but you can't go into the punishment aspect.
 "MR. CLARK: Please, sir, that's an inherent part of the plea agreement.
 "THE COURT: It may well be, but the law says you can't go into it because it's going to come out and — I sustain the objection.
 "MR. CLARK: May it please the Court, may I ask on what grounds the objection —
 "THE COURT: Self v. The State of Alabama — I mean The State of Alabama v. Self. I tried the case about six months ago, and many more cases than that, but that's the one I'm rather familiar with.
 "MR. CLARK: I'm not familiar with case, please sir. May I have an opportunity to look at the case.
 "THE COURT: No. I haven't the slightest idea what the citation is. It's been affirmed. Certiorari denied.
 "Q. You also were charged with two — are charged, still are charged with two sales; is that right?
"A. Yes, sir. Sales and possession. *Page 942 
 "MR. CLARK: Well, may I ask him, please, sir, whether he knows whether the punishment has been reduced from what the maximum or rather the minimum punishment is?
 "MR. NAIL: May it please the Court, I'm going to object to his — He's arguing objections in front of the jury.
 "MR. CLARK: Well, I'll be happy to do it out of the presence of the jury, if the Court please.
 "MR. NAIL: And I object to it, may it please the Court.
 "THE COURT: I think I'm going to let him ask if the punishment has been reduced as a result of the plea bargaining agreement. The State can go into the fact that there is some kind of punishment still remaining.
"MR. NAIL: Yes, sir.
 "THE COURT: Sure, you can ask him that without going into — don't go into the details or the length or whatever the punishment may be. Just has it been reduced. Go ahead.
 "Q. Do you know, Mr. Arrington, whether the punishment which is to be recommended for you has been reduced from what the miminum punishment under the statute is?
"A. Are you talking about in the trafficking case?
"Q. Yes.
 "A. I don't know. I understand that it is to be reduced to possession.
 "Q. All right. Well, you also understand, don't you, Mr. Arrington, that there has been a recommendation — there will be a recommendation by the State that you be placed on probation?
"A. Yes, sir.
 "Q. You understand that means that you won't go to jail?
"A. No, sir.
 "Q. Well, you understand that if probation is granted you won't go to jail; isn't that right?
"A. If probation is granted, yes, sir."
After refusing defense counsel's request to show the terms of punishment which the co-defendant, Arrington, was to receive under the plea bargain agreement, the trial court then excused the jury and allowed defense counsel to make a proffer of proof as to the range of punishment for the offense in question outside the presence of the jury. R. 370.
The trial court and the State, in support of the trial judge's position in limiting cross-examination, cited this court's opinion in Self v. State, 459 So.2d 978 (Ala.Crim.App. 1984). The issue in Self was whether or not the trial court erred in refusing to allow the appellant to read the trafficking statutes to the jury during trial. Because the issue in Self is different from the issue in the case at bar, the trial court's reliance on Self is misplaced. Self dealt with a proper voluntariness predicate for Self's confession.
The issue in the case at bar, however, is the extent of an inducement or possible bias that the co-defendant, Arrington, might have for his testimony in the cause.
Clearly, Arrington, having testified on direct examination, had set forth the fact that he had entered into plea bargain agreement with the State in exchange for this testimony.
In dealing with the Sixth Amendment to the United States Constitution's guarantee to the right of an accused in a criminal prosecution to be confronted with the witnesses against him, the Supreme Court in Davis v. Alaska,415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974) stated the following:
 "Cross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested. Subject always to the broad discretion of a trial judge to preclude repetitive and unduly harassing interrogation, the cross-examiner is not only permitted to delve into the witness' story to test the witness' perceptions and memory, but the cross-examiner has traditionally been allowed to impeach, i.e., discredit, the witness. One way of discrediting the witness is to introduce evidence of a prior criminal conviction of that witness. *Page 943 
By so doing the cross-examiner intends to afford the jury a basis to infer that the witness' character is such that he would be less likely than the average trustworthy citizen to be truthful in his testimony. The introduction of evidence of a prior crime is thus a general attack on the credibility of the witness. A more particular attack on the witness' credibility is effected by means of cross-examination directed toward revealing possible biases, prejudices, or ulterior motives of the witness as they may relate directly to issues or personalities in the case at hand. The partiality of a witness is subject to exploration at trial, and is `always relevant as discrediting the witness and affecting the weight of his testimony.' 3A J. Wigmore, Evidence § 940, p. 775 (Chadbourn rev. 1970). We have recognized that the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination. Green v. McElroy, 360 U.S. 474, 496 [79 S.Ct. 1400, 1413, 3 L.Ed.2d 1377] (1959)."
Since, as in the case at bar, the State had brought out on direct examination that, in fact, there had been a plea bargain agreement entered into by the State with Arrington in return for his testimony, the full terms of this agreement must be allowed to be placed before the jury in passing upon the credibility, as well as the possible bias or motive of the appellant's accomplice in testifying for the State. CitingDavis v. Alaska, supra and People v. Tyler, 54 A.D.2d 723,387 N.Y.S.2d 478 (1976), the Supreme Court of Iowa in State v.Donelson, 302 N.W.2d 125 (1981) stated:
 "The rule is unquestioned that a defendant may inquire about the concessions the accomplice hopes to receive or has been promised for his testimony, and where the State has gone so far as to enter into a bargain with the accomplice the defendant must be allowed to inquire about the terms of the bargain so that the jury may better understand the possible motivations of the accomplice as he sits on the stand."
We pretermit consideration of other assignments of error as they are not likely to arise again on retrial of this cause. However, because of the error herein set forth, this cause is due to be and the same is, hereby, reversed and remanded for new trial. Ball v. State, 337 So.2d 31 (Ala.Crim.App. 1976), cert. quashed, 337 So.2d 39 (Ala. 1976); Lynn v. State,477 So.2d 1385 (Ala. 1985).
REVERSED AND REMANDED.
All the Judges concur.